UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BALDEMIRO LOPEZ,** | |
| Petitioner, | |
| -against- | 18-CV-4392 (ALC) |
| **MICHAEL CAPRA,** *Superintendent*, | **OPINION AND ORDER** |
| Respondent. | |

**ANDREW L. CARTER, JR.,** United States District Judge:

Petitioner Baldemiro Lopez ("Petitioner" or "Lopez"), proceeding *pro se*,[1] brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), challenging his 2015 conviction and sentence for burglary in the second degree. Petitioner argues that he was denied his constitutional "right to a defense" and that his conviction lacked sufficient evidence. For the reasons set forth below, the petition for writ of habeas corpus is **DENIED**.

**I.    BACKGROUND**

    **A.  Evidence Presented at Trial**

This case arises from a domestic dispute between Lopez and his girlfriend, Tonie Coggins ("Coggins"). At trial, Coggins testified that in 2014 she was living in her apartment at 2855 Eighth Avenue with her two minor children. (Tr., ECF No. 16-3[2] at 42:6–24, 52:19–21.) She began dating

---

[1] In reviewing a *pro se* petition, the Court construes the pleadings liberally and interprets them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks). "Nevertheless, a *pro se* litigant is not exempt 'from compliance with relevant rules of procedural and substantive law.'" *Washington v. Walker*, No. 22-CV-6565 (LTS), 2022 WL 15524453, at *1 (S.D.N.Y. Oct. 26, 2022) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

[2] The trial transcript begins at ECF No. 16-3 at page 321.

Lopez in February 2014. (Tr. at 52:19–53:5.) In March or April 2014, Lopez moved into the apartment. (Tr. at 53:13–55:11.) Coggins gave Lopez a key "so he could enter [her] apartment at his own will." (Tr. at 56:17–21.)

Beginning in or around April 2014, Coggins and Lopez began to argue frequently, which at times escalated into physical altercations. On April 29, during an argument, Lopez knocked a lit cigarette out of Coggins' hand (Tr. 59:10–11) and repeatedly referred to her as a "bitch". (Tr. 59:20–60:6.) He also threw his drink in her face, grabbed her hair, pushed her to the ground, and told her, "this bitch don't know who she fucking with." (Tr. 60:22–61:5.) Coggins testified that when Lopez's friend tried to intercede to remove Lopez from the apartment, Lopez grabbed a kitchen knife, which he slammed on the table before leaving with his friend. (Tr. 62:6–20.) Lopez was charged with assault in the third degree and the New York Criminal Court issued an order of protection ("Order of Protection"). The Order directed Lopez to "[r]efrain from communication or any other contact" with Coggins and specifically stated that it would "remain in effect even if the protected party has, or consents to have, contact or communication with the party against whom the order is issued." (State Record ("S.R."), ECF No. 16-2 at 68.)

Following Lopez's release from jail, Coggins allowed him to return to the apartment. (Tr. at 67:9–10.) On May 13, 2014, Lopez found Facebook messages that Coggins had sent to her ex-girlfriend, Christina Smith ("Smith"). (Tr. at 69:1–5.) This discovery, according to Coggins, made Lopez "irate in the house in front of my children", and she decided to call her cousin, Shamica Glover ("Glover"), so that her cousin could hear what was happening. (Tr. at 70:1–4.) Lopez then began threatening both Coggins and Glover, yelling, "your fucking cousin she think she's fucking slick" and "I kill bitches like her." (Tr. at 70:17–20.) He also told them that he had "seen situations where motherfuckers kill the kids, kill the parents and turn the gun on themselves." (Tr. at 70:21–23.) Coggins said that she took this statement as "subliminal towards [herself], like an indirect threat."

(Tr. 73:16–17.) Then, when Coggins tried to take the phone back from Lopez, he bit her lip, causing it to bleed and leaving a visible bruise. (Tr. 70:24–71:21.)

On May 15, 2014, Coggins decided that she wanted Lopez to move out, so she removed her key from his keyring while he was sleeping. (Tr. 73:20–74:21.) The next day, Lopez confronted Coggins about the key. (Tr. 75:19–24.) Coggins responded by telling him that "[y]ou really seriously need to think about going. Things are getting worse here[.]" (Tr. 75:23–24.) Lopez told her that he was "not going nowhere" and that "this is my fucking house, I leave when I feel like leaving." (Tr. at 76:1–2.) Lopez eventually relented and left the apartment after Coggins promised him that she would let him back in when he needed to retrieve his belongings. (Tr. at 76:3–21.) Coggins testified that she let Lopez return to the apartment around four times on March 16 so he could pick up his clothes and other belongings that were left there. (Tr. at 76:15–23.)

After midnight on May 17, 2014, Coggins let Lopez back into her apartment a final time before putting her children to bed. (Tr. 77:2–3.) After he left, she locked the door; however, around 1:00 a.m., Lopez returned and tried to reenter the apartment. (Tr. 77:8.) When Coggins would not open the door for him, Lopez began banging and kicking the outside wall of her apartment and ringing the doorbell for two hours. (Tr. 77:15–25.) While this was happening, Coggins was on the phone with Smith, who could hear Lopez banging and kicking. (Tr. 78:4–8.) The noise also woke up Coggins' neighbor and her children. (Tr. 78:16–21, 194:18–195:8.)

After the banging and kicking stopped, Coggins believed that Lopez had left the building. (Tr. 83:1.) She stayed on the phone with Smith for a while, but eventually started dozing off. (Tr. 83:2–5.) Later that night, she woke up suddenly after hearing Lopez's voice "fairly close like it was present." (Tr. 83:11–12.) She went to investigate and found him inside the apartment standing in her bedroom. (*Id*.) Lopez told her that he had entered the apartment through her fire escape. (Tr. 83:16–

3

17.) Smith, who was still on the phone, also testified that she heard Lopez tell Coggins that he had entered the apartment through her fire escape. (Tr. 271:21–25, 275:15–16.) Coggins then checked her children's bedroom, where the fire escape was located, and saw that the dresser had been "pulled out" from the window and the fire escape gate on the window was open. (Tr. 83:18–23.) Coggins testified that she was "livid" and "scared" and told Lopez to leave her apartment. (Tr. 84:1–10.) Lopez refused to leave. (Tr. 84:9–10.)

The police responded to a 911 call at the apartment around 3:20 a.m. on May 17, 2014. (Tr. 165:16–17.) Coggins eventually told the responding officers that she had an Order of Protection against Lopez and that he had entered her apartment through the fire escape. (Tr. 168:1–10.) Lopez told the police that he was aware of the Order of Protection and that he knew he was "not supposed to be here, but [he] was [t]here all day long yesterday, there was no problem." (Tr. 168:17–169:13.) Petitioner also admitted that he had entered the apartment through the fire escape. (Tr. 169:12–13.)

When the police attempted to place Lopez under arrest and handcuff him, he resisted and tried to flee. (Tr. 170:17–171:25.) Lopez was eventually taken into custody after additional officers responded to the scene. (Tr. 172–73.)

### B. Admission of Petitioner's Medical Records

At trial, Petitioner sought to introduce roughly 200 pages of his certified medical records to rebut the assertion that he was physically able to climb up Coggins' fire escape. (Tr. at 296:23–297:4.) Petitioner's attorney explained to the trial judge that the purpose of the records was to show his client's "weakened condition" following a November 2013 shooting, which had been put at issue by Coggins' testimony. (Tr. at 297:21–298:8.) Coggins had testified that Lopez told her that he had been shot in November 2013 and that as a result, he sometimes walked with a limp. (Tr. at 80:12–82:11, 123:22–124:15.) However, she also stated that he was generally "fine" and that "you never

4

would have known he got shot" because he engaged in various physical activities. (Tr. at 80–82, 123–124.) Both Coggins and the arresting officer testified that at the time of the burglary, Lopez did not walk a with visible limp. (Tr. at 82:7–11, 194:3–13.)

The People objected to admission of the medical records, arguing that evidence of Lopez's November 2013 shooting was not relevant since it had occurred over six months prior to his arrest and because eyewitnesses had testified that he did not walk with a limp. (Tr. at 298:16–299:8.) After a three-minute review of the medical records, the trial judge denied admission of the records, finding that they contained results of "complex medical tests" which, if entered into evidence, would "cause the jury to get lost in speculation as to what all this means." (Tr. 299:25–300:13.) Petitioner's attorney attempted to reargue his request, noting that the judge had only reviewed the 200 pages for roughly three minutes and emphasizing the potentially probative nature of the documents to Petitioner's defense, but the judge declined to revisit his ruling. (Tr. at 300:16–301:3.) As such, Petitioner did not mount any evidence in his defense at trial.

### C. Verdict and Sentence

On March 5, 2015, Lopez was convicted of one count of burglary in the second degree, one count of criminal contempt in the first degree, two counts of endangering the welfare of a child, and one count of resisting arrest. (Petition, ECF No. 1 at 1.) On April 28, 2015, he was sentenced to eight years in prison with five years of post-release supervision for the burglary in the second degree count, two to four years in prison for the first degree criminal contempt count, and one year in prison on the remaining counts, with each sentence running concurrently. (S.R. 5–6.)

### D. Direct Appeal

Petitioner filed an appeal to the Appellate Division, First Department ("First Department"), arguing that (1) the evidence supporting his second-degree burglary conviction was legally

insufficient and against the weight of the evidence; (2) he was deprived of his right to present a defense as to his medical records; and (3) his sentence was excessive. (S.R. 70–107.)

The First Department affirmed the judgment of conviction, finding that the burglary verdict was based on legally sufficient evidence and that the trial court had properly exercised its discretion to deny Petitioner's request to introduce his medical records. *People v. Lopez*, 147 A.D.3d 456 (1st Dep't 2017). Specifically, the panel found that the evidence presented as to burglary "warranted an inference that, beyond his unlawful entry into the victim's apartment, defendant intended to violate another provision of the order of protection. . . namely, the provision requiring him to stay away from her and not to communicate with her. . ." *Id.* at 456. The court also noted that there was ample evidence of violent and hostile behavior towards Coggins, supporting an inference that Petitioner entered the apartment in order to assault or threaten her. *Id.* at 457. As to the medical records, the panel found that the trial judge had properly exercised his discretion to exclude the "voluminous records" that were likely to confuse the jurors and "encourage them to speculate and appoint themselves as medical experts regarding the time it would take particular injuries to heal." *Id.* However, the panel declined to review Petitioner's constitutional "right to defense" claim, finding that he had "never asserted that he was constitutionally entitled to introduce these records" and thus "he only raised a question of state evidentiary law[.]" *Id.*

Petitioner then filed a request for leave to appeal to the Court of Appeals (S.R. 170–175), which was denied on April 20, 2017. *See People v. Lopez*, 29 N.Y.3d 999 (2017).

**E. The Petition**

Thereafter, Petitioner filed this timely *pro se* habeas petition on May 16, 2018 pursuant to 28 U.S.C. § 2254, alleging that: (1) the evidence of burglary in the second degree was insufficient and

6

(2) he was deprived of his right to present a defense when the trial court precluded introduction of his medical records into evidence. (*See generally* Petition, ECF No. 1.)

Respondent filed an opposition brief on December 14, 2018, arguing that: (1) Petitioner's burglary conviction was supported by sufficient evidence and (2) Petitioner's right to present a defense claim is both procedurally barred and not contrary to established federal law. (*See generally,* Opp'n, ECF No. 15). Petitioner filed a reply in support of his Petition on February 1, 2019. (Reply, ECF No. 18.)

## II.   LEGAL STANDARD

A petitioner seeking habeas corpus relief must first show that his custody[3] is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A federal court may only grant habeas relief with respect to a federal claim adjudicated on the merits in state court, if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[3] Petitioner was released from Sing Sing Correctional Facility ("Sing Sing") on October 22, 2021 and is on post-release supervision until October 22, 2025. *See* "Lopez, Baldemiro", DIN: 15A2364, available at https://nysdoccslookup.doccs.ny.gov/.

For a district court to address a habeas petition, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This "in custody" requirement is jurisdictional and is satisfied if the petition is filed while the petitioner is in custody pursuant to the conviction or sentence being attacked. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), citing, *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). It is well settled that jurisdiction is not defeated even if petitioner is later paroled because a petitioner need not be currently physically imprisoned, but only presently suffering from "substantial restraints not shared by the public generally." *Johnson v. Peters*, No. 92-CV-647 (JG), 1996 WL 1086426, at *2 (E.D.N.Y. July 8, 1996) (quoting *Crescenzi v. Supreme Court of the State of New York*, 749 F.Supp. 552, 554 (S.D.N.Y.1990)); *see also Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006). Because this Petition was filed while Lopez was incarcerated and he is currently on post-release supervision, Petitioner is "in custody" for the purposes of the Court's review of his conviction. *See id.*

Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is a "deferential standard", *Robinson v. LaClair*, No. 09-CV-3501 (KAM), 2011 WL 115490, at *3 (E.D.N.Y. Jan. 13, 2011), and is not intended to be used "as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 779 (2010)). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his federal rights have been violated. *See Jones v. Vacco*, 126 F. 3d 408, 415 (2d Cir. 1997) (citation omitted).

Additionally, "[a] state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion." *Pine v. Superintendent, Green Haven Correctional Facility*, 103 F. Supp. 3d 263, 275 (N.D.N.Y. 2015) (citing *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "The question under [the statute] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### III. DISCUSSION

#### A. Admission of Petitioner's Medical Records

First, Petitioner argues that he was denied his right to present a complete defense in violation of the Sixth and Fourteenth Amendments after the trial court denied admission of his medical records. (Petitioner at 7.) Respondent argues that the claim is procedurally barred from habeas review because Petitioner failed to preserve his constitutional claim for appellate review. (Opp'n. at 32.)

i.   *Applicable Law*

Before a federal court may address the merits of a § 2254 claim, state prisoners must "exhaust" their claims by pursuing them in the state court system until no further avenue of relief is available there. 28 U.S.C. § 2254(b), (c). "The exhaustion rule is rooted in a policy of fostering federal-state comity by giving the state the initial opportunity to pass upon and correct alleged violations of its prisoners' federal constitutional rights." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

Exhaustion is a two-stage inquiry. First, "the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts". *Klein*, 667 F.2d at 282 (citing *Barnes v. Jones*, 665 F.2d 427, at 432 (2d Cir. 1981)). "Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim." *Id.* (citing 28 U.S.C. § 2254(c)).

"[I]f the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, [a court] 'must deem the claim procedurally defaulted.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (citing *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). "Alternatively, a procedural default occurs if the state court's rejection of a federal claim rests on a state law ground—such as the operation of a state procedural rule—that is both 'independent of the federal question and adequate to support the judgment.'" *Id.* (citing *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008)).

There are two recognized exceptions to a procedural default: "[w]here a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas

9

only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (quoting *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006)); *see also Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986). A petitioner may establish "cause" (1) if some objective factor, external to petitioner's defense, interfered with his ability to comply with the state's procedural rule or (2) where it would have been "futile" to require exhaustion because prior state case law has consistently rejected a particular constitutional claim. *Gutierrez*, 702 F.3d at 111–12.

        ii.    *Preservation of Petitioner's Constitutional Claim*

The Court finds that Petitioner's "right to defense" claim is procedurally barred from habeas review. "New York's contemporaneous objection rule requires a party to object to what he or she believes is a legal error in a trial court's ruling or instruction 'at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.'" *Gutierrez*, 702 F.3d at 110 (citing N.Y. Crim. Proc. Law § 470.05(2)). The Second Circuit has held that "[w]here a party fails to lodge such a contemporaneous objection, the issue is unpreserved for appeal because of the party's procedural default." *Id.* at 110–111. Where this is the case, "a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." *Id.* (collecting cases).

Here, Petitioner's attorney objected to the trial court's exclusion of the medical records on evidentiary grounds (*i.e.*, he objected to the judge's apparent cursory review of the medical records and determination that they would confuse the jury), but he did not object to the court's ruling on constitutional grounds. (*See* Tr. at 300:16–24.) The First Department thus found that Petitioner's "right to defense" claim was "unpreserved" and declined to review it "in the interest of justice." *Lopez*, 147 A.D. 3d at 457.

On reply, Petitioner argues that his "right to defense" claim "must be heard on its merits", but has articulated no "cause" or "prejudice" resulting in a "miscarriage of justice" that would compel the Court to review the claim on the merits. *See Coleman v. Thompson*, 501 U.S. 722, 749 –750 (1991). Furthermore, the cases cited by Petitioner to support his argument that the constitutional "right to defense" claim was preserved are not applicable to the facts here. (*See* Reply at 2.) For instance, Petitioner cites *Howard v. Walker* for the proposition that "a claim need not be addressed in detail by a state court to have been adjudicated on the merits." 406 F. 3d 114 (2d Cir. 2005). Likewise, Petitioner maintains that the First Department's opinion contained "no such language" making it "'clear from the face of the opinion' that the state court's decision rested on a state procedural bar[.]" (Reply at 2 (quoting *Garner v. Lee*, 908 F.3d 845 (2d Cir. 2018).) However, the First Department did make clear in its decision that it "decline[d] to review [the] *unpreserved* constitutional claim in the interest of justice." *Lopez*, A.D.3d at 457 (emphasis added).

Although the panel also ruled in the alternative that Petitioner's constitutional "right to defense" claim lacked merit, this does not mean that the claim was preserved for purposes of habeas review. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810–11 & n.4 (2d Cir.2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."); *see also Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996). Rather, the panel clearly found that Petitioner's attorney's failure to object to the trial judge's ruling on constitutional grounds precluded appellate review.

Accordingly, the Court finds that Petitioner's "right to defense" claim was not preserved and is therefore procedurally defaulted. *See McNeil v. Capra,* No. 13-CV-3048 (RA), 2019 WL 1897750, at *4 (S.D.N.Y. Apr. 29, 2019).

### B. Sufficiency of the Evidence of Burglary in the Second Degree

Second, Petitioner argues that there was insufficient evidence in the record for his burglary conviction, in violation of his Fourteenth Amendment due process rights. Specifically, Petitioner contends that the prosecution did not prove that he intended to commit a crime when he entered the apartment because the record demonstrates that Petitioner merely reentered the apartment in an attempt to retrieve his belongings. (Petition at 9–10.)

  i. *Applicable Law*

"In a challenge under 28 U.S.C. § 2254 to the evidentiary sufficiency of a state criminal conviction, [a court] review[s] the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). In addition to "crediting every inference that could have been drawn in the government's favor", a court must also "defer[ ] to the jury's assessment of witness credibility, and its assessment of the weight of the evidence." *United States v. Vilar*, 729 F.3d 62, 91 (2d Cir. 2013) (citing *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008)). Thus, a "[p]etitioner bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula*, 297 F.3d at 179 (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993) *cert. denied*, 528 U.S. 1170 (2000)).

When considering the sufficiency of the evidence of a state conviction "[a] federal court must look to state law to determine the elements of the crime." *Ponnapula*, 297 F.3d at 179 (quoting *Quartararo*, 186 F.3d at 97). To establish Petitioner's guilt of burglary in the second degree, the prosecution was required to prove that Petitioner knowingly entered a dwelling or remained unlawfully therein, "with intent to commit a crime therein." N.Y. Penal Law § 140.25(2). However,

12

the prosecution need only establish a defendant's general intent to commit a crime and "not his intent to commit a specific crime" while in the apartment. *People v. Lewis*, 5 N.Y.3d 546, 552 (2005). This "intent may be inferred from the circumstances of [the defendant's] unlawful entry, unexplained presence on the premises, and actions and statements when confronted by police or the property owner[.]" *People v. Womack*, 143 A.D.3d 1171 (2016).

      ii.    *Sufficiency of the Evidence*

Marshalling the evidence in the record in favor of the prosecution, this Court agrees with the First Department's conclusion that there was sufficient evidence presented at trial for Petitioner's conviction of burglary in the second degree.

As an initial matter, Petitioner is correct that the unlawful entry in violation of the Order of Protection cannot itself be used as the predicate crime to establish the intent element of burglary. If that were the case, as New York state law recognizes, "every violation of a do-not-enter provision of an order of protection would become a burglary the instant [a] defendant knowingly entered upon the banned premises." *Lewis*, 5 N.Y.3d at 551 (2005).

Here, however, there is ample evidence in the record for the jury to conclude that Petitioner intended to further threaten or harass Coggins when he entered the apartment through her fire escape. For instance, Coggins testified that in the days leading up to Petitioner's arrest he told her that he had "seen situations where motherfuckers kill the kids, kill the parents and turn the gun on themselves", which she interpreted as a threat. (Tr. at 70:21–23, 73:16–17.) There was also testimony that Petitioner menaced Coggins with a kitchen knife, knocked a lit cigarette out of her hand, pushed her to the ground, and bit her lip until it bled. (Tr. 59:10–11, 60:22–61:5, 62:6–20, 70:24–71:21.) Moreover, in the hours leading up to his entry into the apartment, Petitioner incessantly banged and kicked on the apartment door and exterior walls and rang the doorbell for two hours. (Tr. 77:15–25.)

This testimony is sufficient to support the jury's finding that Petitioner intended to commit a crime while in the apartment. *See Rios v. Miller*, No. 1:17-CV-02256(ALC), 2021 WL 1178163, at *5 (S.D.N.Y. Mar. 29, 2021), *appeal dismissed* (Oct. 12, 2021). Specifically, the record supports an inference that Petitioner "intended to harass, menace, intimidate, threaten or interfere with [Coggins] in her apartment, in express violation of the terms of the orders of protection (other than those barring entry)." *Lewis*, 5 N.Y.3d 546, 552, 840 N.E.2d 1014 (2005).

Petitioner's argument that "the only reasonable inference [from the evidence] is that petitioner entered Coggins['] apartment to look for something or gather his things" (Petition at 10), is without merit. "[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal...." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citing *United States v. Rosa*, 11 F.3d 315, 337 (2d Cir. 1996)). A "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326). Thus, the Court is required to presume that the jury evaluated the competing inferences regarding Petitioner's intent when he entered the apartment and determined that he was guilty of burglary in the second degree.

Accordingly, the Court finds that Petitioner's second ground for relief to reverse his burglary conviction lacks merit. *Rios*, 2021 WL 1178163, at *5.

IV. **CONCLUSION**

For the reasons above, the Petition for writ of habeas corpus is **DENIED**. The Clerk of Court is respectfully directed to close this case and mail a copy of this Opinion and Order to Petitioner.

**SO ORDERED.**

Dated:  November 10, 2022
        New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**